## HAYS v. WOOD et al.

No. 13897—Opinion, Filed Sept. 30, 1924.

Rehearing Denied May 5, 1925.

**1. Guardian and Ward—County Court's Control of Guardians—Statute.**

Section 1071, Comp. Stat. 1921, and paragraph 11 thereof, confers jurisdiction on the county courts of the state "to appoint and remove guardians for infants, and for persons insane or otherwise incompetent, to compel payment and delivery by them of money or property belonging to their wards, to control their conduct and settle their accounts."

**2. Indians—Removal of Restrictions on Land—Revisory Statute.**

Act Congress May 27, 1908, c. 199, 35 Statutes 312, entitled "An act for the re-

moval of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes, " is a revising act, and was intended as a substitute for all former acts relating to the subject of such restrictions, and operated to repeal the provisions of Act Congress April 26, 1906, c. 1876, 34 Stat. 137, and previous congressional enactments in conflict therewith on the same subject. Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259.

### 3. Same—Conveyance of Inherited Lands by Full-Bloods.

Section 9, Act Congress May 27, 1908, removed restrictions against alienation of inherited lands, and authorized adult full-blood Indian heirs to convey such land, but provided, as an essential to the validity of such conveyance, that the same should be approved by the court having jurisdiction of the settlement of the estate of said deceased allottee. Chupco v. Chapman, 76 Okla. 201, 170 Pac. 259.

### 4. Same—When Statute Effective.

Section 9 of the Act of May 27, 1908, fixes the restrictions on alienation of allotted land of the Five Civilized Tribes after the death of the allottee, and there being no expression or inference in the section or act that it was the intent of Congress to postpone the time when said section should take effect, therefore said section became effective May 27, 1908. Seiffert et al. v. Jones et al., 77 Okla 204, 186 Pac. 472.

### 5. Same—Conveyance by Incompetent— Guardianship.

Under section 22 of Act of April 26, 1906, the inherited lands of a full-blood adult Chickasaw Indian, was alienable, and where the adult heir was an incompetent, the county court of the county of his or her residence had jurisdiction to appoint a guardian for such incompetent under section 1079, Comp. Stat. 1921, to act for and represent such incompetent in the sale of her inherited lands, under the direction and supervision of the county court, as provided by the state law, and where the act of 1908 became effective, prior to the final confirmation and approval of the sale, and the county court in which the guardianship proceedings were pending, being the court having jurisdiction of the settlement of the estate of the deceased allottee, was duly authorized and impowered to approve the sale as provided by section 9 of Act of May 27, 1908.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error From District Court, Marshall County; Geo. S. March, Judge.

Action by Louisa Hays, by J. W. Johnson, guardian, against L. E. Wood and another.

Judgment for defendants, and plaintiff appeals. Affirmed,

Minter & McClendon and Geo. E. Rider, for plaintiff in error.

Don Welch, A. T. Kelley, and John G. Ellinghausen, for defendant in error.

Opinion by JONES, C. This suit was instituted in the district court of Marshall county, Okla., by the appellant, plaintiff in the trial court, against the appellees, defendants in the trial court, to recover possession of certain real estate, for damages, and for partition, alleging that the interest claimed was an undivided one-third interest in the land involved, inherited by the plaintiff, Louisa Hays, from her mother, Silvia Okayambby, a full-blood, adult, Chickasaw Indian and the plaintiff is entitled to the immediate possession of said land.

Defendant, among other defenses pleaded, avers that he is the owner of said lands by reason of a certain guardian's deed duly executed by J. K. Warren guardian of the said Louisa Hays, the appellant, that said deed was executed on the 10th day of August, 1908, and was duly approved by the county court of Marshall county.

In reply to this defense, plaintiff alleges that said guardian's deed is void, because there was no authority of law authorizing the granting of, and execution of same. Defendant interposed a motion for judgment on the pleadings, and on the 17th day of May, 1922, same was duly presented to the court, and sustained, and judgment rendered for the defendant, upholding the validity of the guardian's deed, and against the plaintiff. From which order and judgment plaintiff prosecutes this appeal.

The appellant assigns but one specification of error, namely: the court erred in sustaining the motion of the appellee to render judgment in his favor on the pleadings in the district court, and in rendering judgment in favor of said defendant, appellee herein, and dismissing the petition of appellant, plaintiff in the district court, and under this specification of error argues but one question, and that is, Did the county court of Marshall county, Okla., on March 23, 1908, have jurisdiction to entertain the petition of the guardian of Louisa Hays, an incompetent full-blood Chickasaw Indian, for authority to sell, under and by virtue of the laws of the state of Oklahoma, and the Acts of Congress, her inherited interest in the lands of her deceased mother, said lands constituting a portion of said mother's allotment as a full-blood Chickasaw Indian, and to make and enter an order on March

30, 1908, based on said petition for the sale of said ward's inherited interest in said land, under the general probate law and procedure in force in the state of Oklahoma, for the purpose of providing funds to support said ward and to improve her other real estate?

Appellant makes the contention that the sale was not authorized by section 22, Act of Congress of April 26, 1906, nor was it authorized under the provisions of the Act of May 27, 1908. The proceedings attacked were instituted in March, 1908, prior to the repeal of the act of 1906 and consummated subsequent to the taking effect of the act of 1908, being finally consummated and the sale approved after the act of 1908 had taken effect, and appellant further contends that if the act of 1908 was sufficient to give authority and jurisdiction to the probate court to make such a sale, that same must necessarily fail, because of the fact that it was instituted before the act of 1908 was passed. Section 22 of the Act of 1906 is as follows:

"That the adult heirs of any deceased Indian of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the lands of the tribe to which he or she belongs, or belonged, may sell and convey the lands inherited from such decedent: and if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States Court for the Indian Territory. And in case of the organization of a state or territory, then by the proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

And section 9 of the Act of 1908 is as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

Under section 22 of the Act of Congress of April 26, 1906, inherited Indian land was alienable by adult heirs, and minor heirs may join in the sale by their guardian, and if the heirs are full-bloods, the sale is made

subject to approval by the Secretary of the Interior, and under section 9 of the act of May 27, 1908, the alienation of inherited Indian lands is authorized by the heirs of any deceased allottee, with the proviso that sale by full-blood heirs shall be approved by the court having jurisdiction of the settlement of the estate of the deceased allottee.

The appellant in this case was a full-blood adult, and her inherited interest in the land here in controversy was alienable under the act of 1906, at the time of the institution of the proceedings under consideration, and by reason of her incompetency it necessitated the appointment of a guardian as provided by sections 1079, 1439, and 1449, Comp. Stat. 1921, whose acts were under the control and supervision of the court making the appointment, as provided by the state laws, and had the sale been consummated while the act of 1906 was still in force, it should have been approved by the Secretary of the Interior, by reason of the fact that the vendor, appellant herein, is a full-blood Indian. The act of 1906 having been repealed and set aside by the act of 1908, prior to the final consummation of the sale, the proceedings and rights of the appellant were necessarily controlled by the provisions of the act of 1908 from and after the date on which it became effective, which was, so far as the question here involved is concerned, on the date of its passage, May 27, 1908, which also provides for the alienation of land such as is here involved. In the case of Seiffert et al. v. Jones et al., 77 Okla. 204, 186 Pac. 472, the court said:

"Section 9 of the Act of May 27, 1908, fixes the restrictions on alienation of allotted land of the Five Civilized Tribes after the death of the allottee, and there being no expression or inference in the section or act that it was the intent of Congress to postpone the time when said section should take effect, therefore said section became effective May 27, 1908."

The Act of 1906, being in full force and effect up to the time of the passage of the act of 1908, there was no interim of time in which the land involved was not alienable, nor in which the court in which the cause was pending lost jurisdiction of the same.

Under the act of 1906 no mention is made of incompetent Indians, but there is no inhibition in the act which would prevent or forbid the state courts from proceeding under the laws of the state and appointing guardians for incompetent Indians, when necessary, as well as any other class of incompetents, and the county court of Marshall county had jurisdiction of the appointment of the guardian, which jurisdiction

was in no wise disturbed by the provisions of the act of 1908, but enlarged, in that the county court having jurisdiction of the estate of deceased allottees was given jurisdiction to approve the sale of inherited lands of all full-blood Indian heirs, and we can see no good reason why the approval of sale by the court having jurisdiction and power to approve same under the act of 1908, should not be given full faith and credit.

The question of incompetency does not affect the federal act in any particular. The right to alienate inherited lands is given to both adult and minor Indians, and in either of such classes there might be an incompetent, and the only effect of incompetency is to require the intervention of a court of competent jurisdiction and the appointment of a guardian to act for the incompetent under the direction of the court, which is controlled by the laws of the state, and not by federal enactment. Incompetency is in no wise a restriction on land, or a restriction against the alienation of land. As the term is used by Congress in dealing with Indian land, it is a personal disability, and is governed and controlled by state laws rather than federal, and does not change or affect the status of an Indian citizen in his relation to the tribal lands, his allotment, and the Acts of Congress applicable to same. The procedure followed originally in the sale of the land here involved and the taking of each particular step leading up to the conveyance was in accordance with the law then in force, and while not specifically authorized by the acts of Congress, it was in accord with the law of the state, which was in full force and effect and appliable to Indian citizens where not in conflict with the acts of Congress.

We cannot assent to the argument urged by appellant, that the sale is void for the reason that section 22 of the act of April 26, 1906, does not provide for the sale of lands inherited by a full-blood Indian heir, who is an incompetent and under legal guardianship as an insane or incompetent person. Should such a rule be adopted there might be some question then raised as to the legal status of a peg leg, or a one-eyed Indian, because of the fact that the act of Congress makes no specific mention of such Indians. This argument recalls to our mind the famous decision of Judge Roy Bean, who in pioneer days was known as law west of the Pecos, who on one occasion discharged a prisoner at the bar charged with murder, when it was disclosed by the evidence on the examining trial that the dead man was a Chinaman, on the ground that there was no provision of the Texas statute on homicide making it murder to kill a Chinaman. Such rules of construction have not yet been adopted by the courts of this jurisdiction.

The mere fact that there was a change of procedure during the pendency of the sale, wherein the right of approval was conferred upon the county court rather than the Secretary of the Interior, does not invalidate or make void the sale. In the case of Chupco et al. v. Chapman et al., 76 Okla. 201, 170 Pac. 259, in the fourth paragraph of the syllabus thereof, the court said:

"In the year 1907, adult, full-blood Creek Indian heirs executed conveyance to inherited lands that were not approved by the Secretary of the Interior, as provided by section 22 of the Act of Congress of April 26, 1906. In the year 1910 the same heirs executed other deeds to the land to the same grantee for a recited consideration. The petition for the cancellation of said last-named deeds alleged that the same were taken in confirmation and ratification of the prior void deeds. Held, that the conveyances, having been approved by the proper court, as provided by the Act of Congress of May 27, 1908, were valid, and conveyed title to the land."

The judgment of the trial court was correct, and we therefore recommend that the same be affirmed.

By the Court; It is so ordered.